MELISSA WALL, Plaintiff-Appellant, v. BERNARD C. PECARO, Defendant-Appellee.

First District (5th Division)   No. 1—88—2729

Opinion filed September 7, 1990.—Rehearing denied November 8, 1990.

Robert P. Sheridan, of Chicago, for appellant.

Cassiday, Schade & Gloor, of Chicago (Kevin G. Burke and Susan E. Conner, of counsel), for appellee.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

## I

Plaintiff Melissa Wall appeals from an order entered by the circuit court, dismissing an intentional infliction of emotional distress claim she brought against defendant Bernard Pecaro, M.D. In the same order, the circuit court also denied Wall's motion for leave to file a sec-

ond amended complaint. We have concluded that the circuit court abused its discretion by not granting her leave to amend; accordingly, the case must be reversed and remanded.

## II

Wall filed a six-count *pro se* complaint on August 14, 1985. She named Susan Panek, M.D., Stephen G. Marshall, D.D.S., Neil B. Hagen, D.D.S., Peter Polverini, M.D., Northwestern University Medical Center, and Dr. Pecaro as defendants. Count IV was directed against Pecaro. Wall alleged that on March 18, 1985, she sought medical treatment from Pecaro, regarding a tumorous growth in the roof of her mouth. Wall charged that he negligently treated her, in that he made an improper diagnosis, causing her to suffer severe emotional distress. Wall further alleged that Pecaro intentionally inflicted severe emotional distress upon her. According to Wall, Pecaro urgently recommended that she submit to unnecessary treatment—the surgical removal of significant portions of her head's internal structures and tissues, as well as the abortion of her 5½-month-old fetus—and repeatedly told her that if she failed to undergo these procedures, her cancer would spread rapidly.

Pecaro moved to dismiss Wall's complaint on October 11, 1985. He argued that her complaint alleged two separate causes of action against him—namely, negligence and intentional infliction of emotional distress—in the same count, contrary to section 2—613 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—613). On November 27, 1985, Wall's current counsel appeared for her and was given leave to respond to Pecaro's motion to dismiss or file an amended complaint. On February 18, 1986, Wall voluntarily dismissed all defendants apart from Pecaro, pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009).

Wall's amended complaint was filed on April 16, 1986. The allegations of the amended complaint are similar to those of the original complaint. Wall alleged that upon seeking medical treatment from Pecaro on March 18, 1985, he recommended that she submit to his surgical removal of significant portions of her head's internal structures and tissues, as well as the abortion of her viable 5½-month-old fetus. Wall claimed that Pecaro stated that these procedures were necessary to save her life from cancer. After that date, Wall now alleged, she advised Pecaro that he was discharged, but he insisted that she allow him to perform the surgeries and even called her at home. Wall averred that Pecaro's statements were made with the intent that they cause her emotional pain, suffering, and distress. By reason of Pe-

caro's statements and actions, Wall concluded, she suffered severe emotional distress.

Pecaro filed his answer on April 28, 1988. Pecaro admitted that he was a licensed physician, that he saw Wall on March 18, 1985, that he discussed various alternative courses of treatment with her, and that he attempted to call her at home to advise her about pathology reports. In all other respects, Pecaro denied the allegations of Wall's amended complaint.

On April 28, 1988, Pecaro was given leave to withdraw his answer and file a motion to dismiss. Pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), Pecaro moved to dismiss Wall's amended complaint on May 12, 1988. Relying on *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, Pecaro argued that Wall failed to state a cause of action for intentional infliction of emotional distress. Specifically, he argued that Wall failed to allege facts showing that his conduct was extreme and outrageous, that her emotional distress was severe, and that his conduct was such that he knew severe emotional distress was certain to result.

On August 3, 1988, Wall filed her response to Pecaro's motion to dismiss. Wall argued that Pecaro did not show that his conduct was not outrageous. According to Wall, Pecaro intentionally acted to terrify her, even after she discharged him, so that she would submit to needless surgery, which would have resulted in the removal of half her face and the loss of her then unborn child. Wall contended that Pecaro's conduct was not merely calculated to cause emotional distress; rather, it was specifically intended to cause emotional distress so as to overbear her will and cause her to agree to the procedures he desired to perform. Wall asserted that Pecaro knew she did not have cancer, or at least did not know that she did. Furthermore, Pecaro knew that Wall had discharged him and that her new doctors determined that she did not have cancer. Yet Pecaro unlawfully continued to communicate with her. Pecaro, Wall urged, was motivated by the fact that he and his colleagues mishandled her treatment from the outset: his associate had engaged in irregular conduct with respect to an excision on her mouth, and the subsequent diagnostic procedures were substandard. Because Wall later obtained proper diagnosis and treatment, and because she suffered no injury as a result of the earlier negligence, she elected not to proceed against those who were only negligent. However, Wall maintained, Pecaro planned to assist his associate in avoiding liability by destroying her face, thereby removing the evidence of negligence. Wall affirmed that the evidence

would support her theory, that Pecaro's conduct was outrageous, and that she stated a cause of action for intentional infliction of emotional distress. But if the circuit court found that her amended complaint was not properly pleaded, she prayed, it should allow her to cure any deficiencies by filing a second amended complaint. Finally, Wall noted, her amended complaint was filed solely for the purpose of removing the defendants charged with negligence in her original complaint.

On August 3, 1988, a hearing was held on Pecaro's motion to dismiss. As in his motion, Pecaro argued that Wall's amended complaint failed to set forth the factual allegations necessary to support a cause of action for intentional infliction of emotional distress. Even if the allegations of Wall's response were considered, Pecaro contended, she failed to state a cause of action. Wall replied that she had sufficiently alleged the tort's elements. In any event, Wall asserted, any deficiencies could be cured by amendment. However, the circuit court stated:

> "The Court is probably being influenced by the fact that now I have a recollection of both Mr. and Mrs. Wall being here in my chambers for 45 minutes to an hour, in reviewing the complete situation with them and talking to them, everything that is in these motions, and even talking to them, and I think the Court has heard all the evidence in the case that would be presented, maybe seeing the situation closer than even a trial judge would see the situation; and if my recollection serves me right, Mr. Sheridan [Wall's attorney], my advice to them was that they did not have a sufficient case.
>
> I told them that even taking it in the best of light that they would have to show a more severe reaction to what had occurred to be successful in their case, and did I not advise them to non-suit the case?"

Notwithstanding the circuit court's remarks, Wall asked for leave to file a second amended complaint. But the circuit court ruled that, even considering the allegations of Wall's response, no amendment would help. The circuit court then concluded that no cause of action had been stated and sustained the motion to dismiss. Counsel for Wall confirmed counsel for Pecaro's understanding that if she had been allowed to file a second amended complaint, it would have included the facts set forth in the response.

On August 4, 1988, the circuit court entered a written order. This order provides in part:

> "That the Plaintiff's Motion for leave to file a Second Amended Complaint is denied, the court finding that, even in consideration of the amendments suggested in Plaintiff's Re-

sponse and by Counsel in open Court, no amendment could state a cause of action for intentional infliction of emotional distress."

Consequently, Pecaro's motion to dismiss was granted, and Wall's cause was dismissed with prejudice. Wall then appealed to this court.

## III

On appeal, Wall argues that her amended complaint—when read together with her response to Pecaro's motion to dismiss—states a cause of action for intentional infliction of emotional distress. In the alternative, she contends that the circuit court should have granted her leave to file a second amended complaint. Pecaro retorts that, even considering the facts alleged in Wall's response, she has failed to state a cause of action. In addition, he maintains, the circuit court did not abuse its discretion in denying her leave to amend. See *Lordahl v. Mauro* (1982), 109 Ill. App. 3d 478, 481, 440 N.E.2d 989, 991; *Whildin v. Kovacs* (1980), 82 Ill. App. 3d 1015, 1017, 403 N.E.2d 694, 696.

■ The tort of intentional infliction of emotional distress was first recognized by the supreme court of Illinois in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. In the recent case of *McGrath v. Fahey* (1989), 126 Ill. 2d 78, 533 N.E.2d 806, the supreme court discussed the tort at length. The court stated that the plaintiff must plead facts indicating that: first, the defendant's conduct was truly extreme and outrageous; second, the defendant either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that his conduct would cause such distress; and third, the defendant's conduct in fact caused severe emotional distress. See *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d 809.

■ ■ *McGrath* is most relevant to our case, however, because the supreme court identified several factors that should be considered in determining whether the tort defendant's conduct is sufficiently outrageous. Among the factors to be considered, the court observed, is the defendant's awareness that the plaintiff is peculiarly susceptible to emotional distress, by virtue of some physical or mental condition or peculiarity. Behavior that—although rude, abrasive, or extremely inconsiderate—might not otherwise be actionable may be deemed outrageous if the defendant knows the plaintiff is peculiarly susceptible to emotional distress. See *McGrath*, 126 Ill. 2d at 89-90, 533 N.E.2d at 811.

The second element, the defendant's intent, is not unduly complex. But the third element—causation—has proved to be troublesome.

Since recognizing intentional infliction of emotional distress in *Knierim*, the supreme court has returned to the Restatement (Second) of Torts section 46 (1965), as well as its comments and illustrations, when applying the tort's elements. (See, *e.g.*, *Davis*, 66 Ill. 2d at 89, 360 N.E.2d at 766-67; *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809.) In this case, we have found the following language from section 46's comment *j* to be helpful:

> "*Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. *** Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious." (Restatement (Second) of Torts §46, comment *j* at 77-78 (1965).)

Illustration 1, in turn, provides:

> "As a practical joke, A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken. B suffers severe emotional distress. A is subject to liability to B for her emotional distress. If it causes nervous shock and resulting illness, A is subject to liability to B for her illness." Restatement (Second) of Torts §46, illustration 1, at 73 (1965).

As previously mentioned, the circuit court considered the facts alleged in Wall's response to Pecaro's motion to dismiss in determining whether her amended complaint stated a cause of action for intentional infliction of emotional distress. For the sake of argument, we shall consider those facts as well. Applying the facts to the principles that have emerged from the foregoing authorities, we must conclude that Wall stated a cause of action. Pecaro's alleged conduct was clearly outrageous. That is, following *McGrath*, Pecaro must have known—or as a doctor can be charged with the knowledge—that by reason of her pregnancy, Wall was peculiarly susceptible to emotional distress, especially because the procedures he recommended would have resulted not only in the loss of her viable fetus but also the loss of half her face. The second element is likewise satisfied, for it is Wall's theory that Pecaro specifically intended to cause her emotional distress in order to obtain her consent to unnecessary surgery. Be that as it may, Pecaro can be charged with the knowledge that there was a high probability that his conduct would cause Wall severe emotional distress. Lastly, in view of section 46's comment *j* and illustra-

tion 1, quoted above, the character of Pecaro's conduct is in itself evidence that Wall experienced severe emotional distress. Pecaro's alleged conduct is at least as outrageous, if not more so, than the conduct described in illustration 1. Were we to hold that Wall did not state a cause of action in this case, we would in effect be holding that doctors may intentionally inflict emotional distress upon their patients with impunity.

■ It must be remembered, of course, that when reviewing the dismissal of a complaint pursuant to section 2—615, an appellate court must interpret all allegations in a light most favorable to the nonmovant. The section 2—615 motion admits all well-pleaded facts and all reasonable inferences to be drawn from them. (See *Iverson v. Scholl, Inc.* (1985), 136 Ill. App. 3d 962, 965, 483 N.E.2d 893, 896.) Consequently, we do not not wish to be understood as implying that Pecaro is guilty of the monstrous conduct alleged by Wall. Pecaro has consistently denied her allegations. Upon remand he may ultimately prevail, perhaps by obtaining summary judgment. Moreover, we do not suggest that all patients who react unfavorably to a doctor's diagnosis have a cause of action for intentional infliction of emotional distress. Unavoidably, many patients will experience emotional distress—even severe emotional distress—when given a diagnosis that requires surgery with grave consequences. But it is only where a doctor acts outrageously, where he intends to inflict severe emotional distress, and where such distress in fact results that a cause of action for intentional infliction of emotional distress can be stated.

■■ ■ If we ignored the allegations of Wall's response and concluded that her amended complaint failed to state a cause of action, however, reversal would still be necessary. It is settled that an action should not be dismissed for failure to state a claim unless it is clear that no set of facts can be proven under the pleading which would entitle the plaintiff to relief. (See *Iverson*, 136 Ill. App. 3d at 965, 483 N.E.2d at 895-96.) And, when ruling on a section 2—615 motion, only facts apparent from the face of the pleading may be considered. (See R. Michael, 3 *Illinois Practice: Civil Procedure Before Trial* ch. 27, §27.4, at 504 (1989).) Here the circuit court based its ruling (that no cause of action for intentional infliction of emotional distress could be stated) upon its discussions with Wall and her husband at a pretrial conference, which supposedly revealed to it that she did not suffer sufficiently severe emotional distress. By basing its decision to deny Wall leave to amend on the grounds of what it learned at a pretrial conference, which is *dehors* the record, we think the circuit court abused its discretion. (See Eisenberg, *Appellate Review of Discretion-*

*ary Judicial Determinations*, 2 Appellate Law Review 8, 12 (1990) (when circuit court applies wrong legal criteria or follows incorrect procedure in exercising its discretion, reversal is generally required).) Therefore, the order of August 4, 1988, must be reversed and the cause remanded so that Wall may file a second amended complaint.

IV

Because the circuit court abused its discretion by denying Wall leave to amend, the order dismissing her case against Pecaro is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LORENZ and MURRAY, JJ., concur.