Deanna PATTERSON and Collin Patterson, by his Mother and Next Friend, Deanna Patterson, Plaintiffs,

v.

XEROX CORPORATION and Andrea Kaelin, Defendants.

No. 94 C 4738.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 26, 1995.

---

Michael Patrick Mullen, William J. Raleigh, Margaret Mary Cahill, Mullen, Raleigh & Cahill, Chicago, IL, Alan Charles Schaefer, Schaefer & Schaefer, Hoffman Estates, IL, for plaintiffs.

**276**

Stephen David Erf, Gregory A. McConnell, McDermott, Will & Emery, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The pleadings in this case require this court to undertake the often difficult task of deciding whether alleged conduct is sufficiently egregious to state a claim for intentional infliction of emotional distress. In this case, an additional question must be considered: Can a fetus suffer intentional infliction of emotional distress? Both of these questions arise in the context of pendent claims to claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). The motions in this case also question whether pregnancy-related complications can be a disability under the ADA.

■ According to the complaint,[1] defendant Xerox Corporation ("Xerox") hired plaintiff Deanna Patterson ("Ms. Patterson") as a Customer Administrator Trainee in its Dallas, Texas office on October 20, 1986. In August, 1990, Xerox relocated Ms. Patterson to its Chicago office, where she began working as a Receivables Representative. In April, 1993, Xerox assigned Ms. Patterson to a new team. Defendant Andrea Kaelin ("Ms. Kaelin") was the supervisor of this new team. In February, 1993, Ms. Patterson learned that she was pregnant and due to deliver in October of that year. By April, 1993, she was suffering from severe back pain as a result of her pregnancy and the aggravation of a prior back injury. To alleviate the pain, Ms. Patterson's obstetrician advised her to take a walk every hour for approximately five to ten minutes. Ms. Patterson informed Ms. Kaelin of her doctor's advice and requested that Xerox allow her to take such

walks. In response, Ms. Kaelin informed Ms. Patterson that she would either have to make up the time that she would spend walking, or else receive no pay for that time. Ms. Kaelin did not place similar restrictions on other employees who took similar breaks.

Beginning in May, 1993, Ms. Kaelin began to harass Ms. Patterson on a regular basis. For example, Ms. Kaelin would often check to see whether Ms. Patterson was sitting in her office chair, and if she was not there, Ms. Kaelin would search for her and chastise her for being away from her chair.[2] She would also follow Ms. Patterson into the restroom and monitor how much time Ms. Patterson spent there. On one occasion in June, 1993, Ms. Patterson was conversing with other employees when Ms. Kaelin approached her, grabbed her arm, and pulled her away from the other employees. Ms. Patterson's arm was bruised during this incident. Ms. Kaelin did not follow or harass the other Xerox employees she supervised.

In June, 1993, Ms. Patterson's obstetrician informed Xerox that Ms. Patterson should be allowed to take brief walks and that Ms. Kaelin had thus far failed to accommodate this request. Ms. Patterson also informed Joan Frisch ("Ms. Frisch"), Xerox's Human Resources Representative, that Ms. Kaelin was harassing her and that the harassment was causing her severe stress and mental anguish. However, the harassment continued despite Ms. Frisch's assurance that she would correct the problem. On July 29, 1993, Ms. Kaelin telephoned Ms. Patterson, who was ill at home, berated her for taking sick time, and informed her that she would not be paid. On August 1, 1993, Ms. Patterson was hospitalized for premature labor. The following day, Ms. Patterson telephoned Ms. Kaelin to inform her that she was hospitalized and would not be at work until she

---

1. The following recitation of facts is taken from the complaint. In resolving a Rule 12(b)(6) motion to dismiss, a court must presume all well-pleaded factual allegations to be true and draw all reasonable inferences in the plaintiffs' favor. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993) (citation omitted).

2. In her response brief, Ms. Patterson states that this conduct occurred on a "near daily basis." In resolving a Rule 12(b)(6) motion to dismiss, a court may consider additional allegations stated for the first time in briefs where, as here, the additional allegations are consistent with the complaint. *See Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992). *Cf. Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439–40 (7th Cir.1994).

received further notice from her doctor. During this telephone conversation, Ms. Kaelin berated Ms. Patterson.

On August 3, 1993, Ms. Patterson gave birth to plaintiff Collin Patterson. His birth was ten weeks premature. As a result, Collin Patterson required extensive medical treatment, including the use of an Apnea Monitor and hernia surgery. He presently requires continued medical attention and it is unknown whether his premature birth will permanently impair his health.

On January 31, 1995, the Pattersons brought a three-count amended complaint against Xerox and Ms. Kaelin. The Pattersons claim that Ms. Kaelin's harassment caused Ms. Patterson to suffer severe stress, mental anguish, sleeplessness, embarrassment, and humiliation, which proximately caused the premature birth of Collin Patterson. Counts I and II charge the defendants with violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and the ADA, 42 U.S.C. § 12101 *et seq.* Count III is a state law claim of intentional infliction of emotional distress against both defendants.

Defendants move to dismiss Ms. Kaelin from Counts I and II, and to dismiss Counts II and III in their entirety, pursuant to FED.R.CIV.P. 12(b)(6).

### Title VII and ADA "Employer"

■ Ms. Kaelin moves to dismiss Counts I and II on the ground that she is not liable under Title VII or the ADA. A court may dismiss a complaint pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citation omitted).

Title VII prohibits an "employer" from discriminating against any individual because of that individual's sex. 42 U.S.C. § 2000e–2(a). The ADA forbids discrimination against qualified individuals with disabilities by any "covered entity," which includes an "employer." 42 U.S.C. §§ 12112(a), 12111(2). Both Title VII and the ADA define an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person ..." 42 U.S.C. §§ 2000e(b), 12111(5)(A).

Noting that the "and any agent" language was inserted into the definition of "employer" in order to ensure that courts would impose *respondeat superior* liability upon employers for their agents' acts, the Seventh Circuit has recently held that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *U.S. Equal Employment Opportunity Commission v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1281–82 (7th Cir.1995). The court recognized that this holding, though only directly applicable to the ADA, "obviously affects the resolution of the very similar questions under Title VII ..." *Id.* at 1282 n. 10. Because Ms. Kaelin is not alleged to satisfy the statutory definition of "employer" under Title VII or the ADA, she is dismissed from Counts I and II of this lawsuit.

### The ADA and "Disability"

■ Xerox moves to dismiss Count II on the ground that Ms. Patterson has failed to state a "disability" covered by the ADA. To state a claim under the ADA, a plaintiff must have a "disability," which is defined as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). To determine whether a plaintiff has sufficiently alleged a disability under the ADA, a court should ask "(1) whether the plaintiff's condition is a physical or mental impairment; (2) whether that impairment affects a major life activity; and (3) whether the major life activity is substantially limited by the impairment." *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1404 (N.D.Ill.1994).

The regulations define a "physical or mental impairment" as a physiological disorder or condition which affects one or more body systems, including the musculoskeletal system. 29 C.F.R. § 1630.2(h)(1). The term "major life activities" includes, but is not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,

and working." 29 C.F.R. § 1630.2(i). "Sitting" is also a "major life activity." 29 C.F.R. § 1630.2(i) App. An individual is "substantially limited" by an impairment if she is "significantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

▪ Xerox argues that Count II should be dismissed because the ADA does not recognize pregnancy as a "disability." *See* 29 C.F.R. § 1630.2(h) App. ("conditions, such as pregnancy, that are not the result of a physiological disorder are … not impairments"). *See also Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331, 341–44 (E.D.Pa.1994); *Tsetseranos v. Tech Prototype, Inc.*, 893 F.Supp. 109, 119 (D.N.H. 1995); *Byerly v. Herr Foods, Inc.*, No. CIV A. 92–7382, 1993 WL 101196, at *4 (E.D.Pa. Apr. 6, 1993). *But see Chapsky v. Baxter Mueuller Div.*, No. 93–6524, 1995 WL 103299 at *3 (N.D.Ill. March 9, 1995) ("pregnancy is a recognized disability under the [ADA]"). Ms. Patterson responds that the disability she claims is not the pregnancy itself, but rather the severe back pain attributable in part to her pregnancy.

Ms. Patterson has alleged that she is disabled from severe back pain resulting from a combination of her pregnancy and the aggravation of a prior back injury.[3] She also claims that this impairment substantially limited her ability to sit at work for extended periods of time. Xerox retorts that her back pain, a consequence of her pregnancy, was merely a transitory impairment and that such impairments are not covered by the ADA. *See* 29 C.F.R. § 1630.2(j) App. ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities"). However, Ms. Patterson has alleged that her back pain was also attributable in part to the

aggravation of a prior back injury, and thus the duration of her condition is impossible to ascertain on the meager record presently before the court. I therefore conclude that the complaint sufficiently alleges a "disability" to survive a motion to dismiss. Accordingly, Xerox's motion to dismiss Count II is denied.

### Intentional Infliction of Emotional Distress

▪ Defendants also move to dismiss plaintiffs' claims for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must allege (1) extreme and outrageous conduct on the part of the actor; (2) that the actor intended, or knew that it was at least highly probable, that her conduct would cause severe emotional distress; and (3) that the conduct did in fact cause severe emotional distress. *Doe v. Calumet City*, 161 Ill.2d 374, 204 Ill.Dec. 274, 282, 641 N.E.2d 498, 506 (1994) (citation omitted); *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). Defendants argue that Deanna Patterson has not alleged conduct that is sufficiently "extreme and outrageous" to state a claim for this tort. They further argue that Collin Patterson, as a fetus, could not have suffered severe emotional distress as a matter of law.

▪ Courts have had some difficulty defining the term "extreme and outrageous" with clarity and precision. The Supreme Court of Illinois has recently explained that conduct is "extreme and outrageous" if "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City, supra,* 204 Ill.Dec. at 283, 641 N.E.2d at 507 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. *d,* at 73 (1965)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v.*

---

3. Xerox correctly notes that Ms. Patterson lists "pregnancy" as her disability under Count II of her amended complaint. *See* Complaint, ¶ 40. However, the court can reasonably infer from the rest of the complaint that, as Ms. Patterson argues in her brief, her true disability is severe back pain, rather than the pregnancy itself.

*Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (quotation omitted). Liability under this tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.; Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 317, 607 N.E.2d 201, 211 (1992) (citation omitted).

 The determination of whether a defendant's conduct is extreme and outrageous must be made on the facts of each particular case. *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir.1989) (citations omitted); *McGrath v. Fahey, supra,* 127 Ill.Dec. at 729, 533 N.E.2d at 811. Recognizing that the "outrageousness" requirement is necessarily difficult to apply because of its vagueness, the Illinois Supreme Court has set forth a nonexclusive list of considerations to guide this determination. *See McGrath v. Fahey, supra,* 127 Ill.Dec. at 727–29, 533 N.E.2d at 809–11; *Doe v. Calumet City, supra,* 204 Ill.Dec. at 283, 641 N.E.2d at 507. For example, the outrageous nature of a defendant's conduct may depend upon the degree of authority which the defendant exercises over the plaintiff:

> [t]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out [than] when made by someone in a comparatively weak position.

*McGrath v. Fahey, supra,* 127 Ill.Dec. at 727, 533 N.E.2d at 809. When the abuse of a position of authority is at issue, a court should also consider whether the defendant reasonably believed that his or her objective was legitimate. *Doe v. Calumet City, supra,* 204 Ill.Dec. at 283, 641 N.E.2d at 507. It is also appropriate to consider whether the defendant was aware that the plaintiff was particularly susceptible to emotional distress due to some physical or mental condition. *Id.* (citations omitted). "Conduct which might otherwise be considered merely rude or abusive may be deemed outrageous where the defendant knows that the plaintiff is particularly susceptible to emotional distress." *Id.*

Ms. Patterson alleges conduct that is sufficiently outrageous to support a claim for intentional infliction of emotional distress. Ms. Patterson was a Xerox employee who worked under the direct supervision and authority of Ms. Kaelin. Accordingly, persistent harassment from Ms. Kaelin would be likely to have a more detrimental effect on Ms. Patterson than similar harassment from a co-worker or other acquaintance. Furthermore, defendants were aware that Ms. Patterson was pregnant and that she was particularly susceptible to emotional distress for this reason. *Accord, Wall v. Pecaro,* 204 Ill.App.3d 362, 149 Ill.Dec. 388, 392, 561 N.E.2d 1084, 1088 (1st Dist.1990). Illustration 11 of the Restatement (Second) of Torts is instructive in this regard:

> A, who knows that B is pregnant, intentionally shoots before the eyes of B a pet dog, to which A knows that B is greatly attached. B suffers severe emotional distress, which results in a miscarriage. A is subject to liability to B for the distress and for the miscarriage.

RESTATEMENT (SECOND) OF TORTS § 46, cmt. *f,* illus. 11, at 76 (1965). The fact that Ms. Patterson was pregnant at the time of these events is significant. To subject an expectant mother to repeated harassment of the type alleged at the workplace, at home, and at the hospital immediately prior to labor—including chastising her for missing work when she had gone into premature labor—may indeed be "extreme and outrageous" conduct.[4]

---

4. The defendants correctly note that conduct must be particularly egregious to support a claim for emotional distress in the employment setting. *See, e.g., Piech v. Arthur Andersen & Co.,* 841 F.Supp. 825, 831 (N.D.Ill.1994) (citation omitted); *Vitkauskas v. State Farm Mutual Auto. Ins.* *Co.,* 157 Ill.App.3d 317, 109 Ill.Dec. 373, 377, 509 N.E.2d 1385, 1389 (3rd Dist.1987) (citations omitted). Exactly what was said, and the context in which it occurred, is unknown at this point. My conclusion is simply that, drawing all inferences in plaintiffs' favor as I am required to

Defendants next argue that Collin Patterson, as a fetus, could not have suffered severe emotional distress as a matter of law. Illinois courts recognize a cause of action for prenatal *physical* injuries suffered as a result of negligent conduct. *See, e.g., Renslow v. Mennonite Hospital,* 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (1977); *Stallman by Stallman v. Youngquist,* 152 Ill.App.3d 683, 105 Ill.Dec. 635, 642, 504 N.E.2d 920, 927 (1st Dist.1987) (citation omitted). Plaintiffs have not, however, shown that Illinois also recognizes a cause of action for prenatal *emotional* injuries suffered as a result of intentional conduct. One problem would be in proof that a fetus can suffer emotional distress. *See, Stallman by Stallman v. Youngquist, supra,* 105 Ill.Dec. at 642, 504 N.E.2d at 927. In the absence of authority, I decline to expand the state law tort of intentional infliction of emotional distress beyond its traditional boundaries. Compare *Zepeda v. Zepeda,* 41 Ill.App.2d 240, 190 N.E.2d 849, 855 (1st Dist.1963) ("it would be an interesting speculation whether a charge of mental distress and emotional suffering could be made and sustained in behalf of an infant"). Defendants' motion to dismiss Collin Patterson's claim for intentional infliction of emotional distress is granted.

### Conclusion

For the reasons stated herein, the motion to dismiss Counts I and II as to Ms. Kaelin is granted. The motion to dismiss Count II as to Xerox is denied. The motion to dismiss Deanna Patterson's Count III claim is denied. The motion to dismiss Collin Patterson's Count III claim is granted.

do on this motion to dismiss, the complaint states a claim for relief under Illinois law.