**Maria CERRATO, Plaintiff,**

**v.**

**Carol DURHAM, Cathy Heslin, and Executive Health Group National Health Services, Defendants.**

**No. 95 Civ. 6456 (LAP).**

United States District Court, S.D. New York.

Sept. 16, 1996.

I. Philip Sipser, Sipser, Weinstock, Harper & Dorn, New York City, for plaintiff.

### *MEMORANDUM AND ORDER*

PRESKA, District Judge:

This is an action alleging employment discrimination on the basis of pregnancy. Plaintiff alleged that defendant Executive Health Group National Health Services ("EHG") through its agents, defendant Carol Durham ("Durham") and defendant Cathy Heslin ("Heslin"), terminated her employment on the basis of her sex and pregnancy-related disabilities in violation of the following statutes: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (1995) ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (1995) ("ADA"), the New York State Human Rights Law, N.Y.Exec.Law, §§ 290 *et seq.* (McKinney 1993) ("State HRL"), and the New York City Human Rights Law, New

York City Administrative Code, Title 8, §§ 8–101 *et seq.* ("City HRL"). Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] moved to dismiss certain of plaintiff's causes of action, including (1) the second cause of action arising under § 12112(a) of the ADA; (2) the fourth and seventh causes of action arising under § 296 of the State HRL and § 8–107 of the City HRL; (3) the first through fifth causes of action as against the individual defendants Durham and Heslin; and (4) the fifth cause of action as against defendant EHG, for failure to state a claim upon which relief can be granted.[2] Plaintiff opposed the motion. Upon review of the motion papers and the complaint, for the reasons discussed below, the motion is denied in part and granted in part.

## BACKGROUND

Defendant EHG is a corporation that provides health services to individual and corporate clients. EHG employed plaintiff Maria Cerrato as a health service coordinator from August 1993 until October 1993 and as a secretary from October 1993 until she was terminated on March 16, 1994. (Amended Complaint, ¶ 11). During the period of plaintiff's employment at EHG, defendants Durham and Heslin were also employees of the company. Durham served as a group manager and was plaintiff's direct supervisor, while Heslin served as acting vice president. (Amended Complaint, ¶¶ 6, 7).

Plaintiff worked at EHG from August of 1993 until January 1994 when a pregnancy test administered by EHG revealed that she was pregnant. (Amended Complaint, ¶ 13). Plaintiff immediately shared the news of her pregnancy with a number of co-workers and management personnel at EHG, including defendant Durham. (Amended Complaint, ¶ 2).

A few weeks later, plaintiff began to experience some complications, including instances of spotting, leaking, dizziness, and nausea. (Amended Complaint, ¶¶ 15, 17, 21, 22). On the basis of these symptoms, her obstetrician referred her to a doctor who specialized in high risk pregnancies. Because the specialist did not conduct evening or weekend office hours, plaintiff requested time off in order to schedule an appointment during working hours. Defendant Durham approved the request, and plaintiff visited the specialist on February 14, 1994; she was paid for her absence as a vacation day. (Amended Complaint, ¶ 15).

Approximately one week later, on February 21, 1994, plaintiff experienced further leaking. She reported her emergency situation to an EHG manager and received permission to take another vacation day in order to see her doctor. (Amended Complaint, ¶ 17).

On March 3, 1994, plaintiff, who had been originally scheduled to take a school-related day off, obtained permission from an EHG manager to use the day to see her doctor instead for a pregnancy-related examination. She was paid for her absence as a holiday. (Amended Complaint, ¶ 18).

On March 8, 1994, plaintiff called in sick due to pregnancy-related complications. EHG did not object to her sick report, and plaintiff was again paid as a vacation day. (Amended Complaint, ¶ 19).

Plaintiff met with defendant Durham and an EHG manager named Sblendido on March 9. Durham and Sblendido asked how plaintiff was feeling and if she wanted to go on disability leave or take a leave of absence. Plaintiff replied that she preferred to continue working and that her doctor had not advised her that it was medically necessary for her to stop working. Neither Durham

---

1. In its Memorandum of Law in Support of the Motion to Dismiss, defendant EHG states that its motion is brought "alternatively under Federal Rule [of Civil Procedure] 56." Defendant has failed to submit the required Rule 3(g) statement. Moreover, discovery is not yet closed. Based upon these circumstances and the tenor of both parties' briefs, I have considered the motion exclusively under Rule 12(b)(6).

2. Although Durham originally moved to dismiss all counts against her for insufficiency of service of process, the defendants' Reply Memorandum of Law in Support of Motion to Dismiss stated that, "[b]ecause Durham has now been served, the defendants withdraw that branch of the motion raising the insufficiency of service of process upon Durham." (Reply Memorandum, p. 2, n. 2).

nor Sblendido warned plaintiff that her job was in jeopardy or that her absences were considered excessive. (Amended Complaint, ¶ 20).

On March 11, plaintiff again called in sick with cramping and other pregnancy-related complications. The group manager to whom she reported her condition did not object to the report, and EHG paid plaintiff for her absence as a vacation day. (Amended Complaint, ¶ 21). On March 14 and/or 15, 1994, plaintiff continued to experience symptoms including cramping and leaking. She attempted to contact a manager and left a message that she was again reporting sick. Again, EHG management raised no objection, and plaintiff was paid for her absence as a vacation day. (Amended Complaint, ¶ 22).

On or about March 16, 1994, plaintiff returned to EHG to resume work. Defendant Durham informed her that defendant Heslin had indicated to Durham that plaintiff had "taken too many days off and had to be let go." (Amended Complaint, ¶ 23). Durham herself disclaimed responsibility for the decision, advising plaintiff that she was acting at Heslin's behest. *Id.* Plaintiff filed this lawsuit in response to the discharge, claiming that her termination was violative of a number of statutes, and defendant EHG moved to dismiss certain of plaintiff's causes of action.

## DISCUSSION

### I. Standard Applicable to a Motion to Dismiss

In deciding a motion to dismiss, I must view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir. 1985). I must accept as true the factual allegations stated in the complaint, *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990), and draw all reasonable inferences in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993). A motion to dismiss can only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### II. Pregnancy as a Disability under the ADA

Defendant EHG asserts that plaintiff's claim under the ADA must be dismissed for failure to state a cause of action because "pregnancy is not a protected 'disability' under the ADA." (Goldberg Aff., ¶ 9). Because at this stage of this lawsuit, it does not appear beyond doubt that plaintiff can prove no set of facts entitling her to relief, I must deny the motion to dismiss on this ground.

In order to state a claim under the ADA, the plaintiff must adequately allege that she suffers from a "disability." The statute contains a three-part definition of the term "disability:"

> The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (1995). Those cases that have addressed whether pregnancy fits within this definition have focused exclusively on the first, objective prong of the definition. *See, e.g., Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 626 (S.D.N.Y.1996) (finding that pregnancy does not constitute "an impairment that substantially limits one or more of the major life activities"); *Garrett v. Chicago School Reform Board of Trustees,* No. 95 C 7341, 1996 WL 411319, at *1–2 (N.D.Ill. July 19, 1996) (finding that plaintiff's pregnancy-related morning sickness might constitute an impairment that substantially limits a major life activity).

Courts consider three factors in determining whether a plaintiff has sufficiently alleged a disability under the objective prong of the definition: "(1) whether the plaintiff's condition is a physical or mental

impairment; (2) whether that impairment affects a major life activity; and (3) whether the major life activity is substantially limited by the impairment." *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1404 (N.D.Ill. 1994). According to the accompanying regulations to the ADA, a physical or mental impairment is a physiological disorder or condition which affects one or more of a listed group of body systems, including the reproductive system. Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, 29 C.F.R. § 1630.2(h)(1) (1996). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). An individual faces a substantial limitation if she is "significantly restricted as to the condition, manner, or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* § 1630.2(j)(1)(ii).

The regulations also offer more particularized guidance regarding pregnancy, stating that "conditions, such as pregnancy, that are not the result of a physiological disorder are not impairments." *Id.* § 1630.2(h). A number of courts, including one within this district, have relied on this regulation to conclude that a pregnant woman can never claim the protection of the ADA. *See, e.g., Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 626 (S.D.N.Y.1996); *Gudenkauf v. Stauffer Communications, Inc.,* 922 F.Supp. 465, 473 (D.Kan.1996); *Villarreal v. J.E. Merit Constructors, Inc.,* 895 F.Supp. 149, 152 (S.D.Tex.1995); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H. 1995); *Byerly v. Herr Foods, Inc.,* No. Civ. A. 92–7382, 1993 WL 101196, at *4 (E.D.Pa. April 6, 1993). *But see Kindlesparker v. Metropolitan Life Ins. Co.,* No. 94 C 7542, 1995 WL 275576, at *1 (N.D.Ill. May 8, 1995) (holding that the ADA does not countenance discharge because a woman must seek medical attention related to pregnancy); *Chapsky v. Baxter V. Mueller Div.,* No. 93–6524, 1995 W.L 103299, at *1 (N.D.Ill. March 9, 1995)

("Pregnancy is a disability under the [ADA].").

Other courts, however, have applied a more refined analysis that seems to be applicable to this case. These courts have distinguished between a normal, uncomplicated pregnancy itself and a complication or condition arising out of the pregnancy and have found that, under particular circumstances, the pregnancy-related condition can constitute a "disability" within the meaning of the ADA. For example, in *Patterson v. Xerox Corp.,* 901 F.Supp. 274 (N.D.Ill.1995), the plaintiff sued her employer for employment discrimination, invoking the ADA. As in this case, the defendant moved to dismiss, arguing that pregnancy is not a disability under the ADA. The plaintiff responded that the disability she claimed was not the pregnancy itself, but the severe back pain that resulted from the combination of pregnancy and a prior condition. The plaintiff alleged that this back pain substantially limited her ability to sit at work for extended periods of time. The court concluded that the plaintiff's allegations that she suffered a recognizable disability under the ADA were sufficient to withstand a motion to dismiss. *Id.* at 278.

Similarly, in *Garrett v. Chicago School Reform Board of Trustees,* No. 95 C 7341, 1996 WL 411319, at *2 (N.D.Ill. July 19, 1996), the plaintiff was a pregnant high school student who was threatened with automatic failure of four classes because of pregnancy-related absences. She sued her school district under the ADA. The defendant argued that plaintiff's alleged disability was simply the fact that she was pregnant and that pregnancy did not fit within the statutory definition of a disability. In response, the plaintiff contended that the disability she claimed was not the pregnancy itself but the morning sickness associated with it. This complication had allegedly imposed significant restrictions on her class attendance and therefore qualified as a physical impairment that substantially limited a major life activity. The court found that plaintiff's allegations were sufficient to survive the defendant's motion to dismiss, although factual issues remained regarding the duration and severity of her condition. *Id.* at *2.

The state of medical knowledge today tends to support the distinction between pregnancy itself and pregnancy-related complications. In 1984, the American Medical Association's Council on Scientific Affairs conceded that "few of our standard medical beliefs about the physical and mental characteristics of pregnancy have any scientific basis." Council on Scientific Affairs, Effects of Pregnancy on Work Performance, 251 JAMA 1995, 1995 (1984), *quoted in* Laura Schlictmann, Accommodation of Pregnancy–Related Disabilities on the Job, 15 Berkley J. Employment & Labor L. 335, 350 (1994). The Council acknowledged that "the advice given by generations of physicians regarding work during normal pregnancy has historically been more the result of social and cultural beliefs about the nature of pregnancy (and of pregnant women) than the result of any documented medical experience with pregnancy and work." *Id.* The Council's new recommendation was that most women with uncomplicated pregnancies "should be able ... to continue productive work until the onset of labor." *Id.* at 1997.

In contrast to its liberal recommendation with respect to normal pregnancies, however, the article listed a number of "substantial complications" of pregnancy that "may be disabling for further work." *Id.* These complications include such conditions as preeclampsia, premature rupture of the membranes, vaginal bleeding, threatened abortion miscarriage, risk of premature, low-birth-weight babies, incompetent cervix, and a number of others. *Id.*

The present case does not require that I decide whether an entirely normal, healthy pregnancy can ever constitute a disability within the ADA, and I expressly decline to determine that question. Rather, this case concerns only whether pregnancy-related conditions including spotting, leaking, cramping, dizziness, and nausea can qualify as disabilities under the ADA so that the woman suffering from such symptoms is protected from adverse employment decisions based solely on her symptoms. The present plaintiff has alleged facts from which it might be concluded that she has suffered an impairment of a bodily system—the re-

productive system—that substantially restricts her capacity to engage in work, a major life activity. While I note that according to the regulations, transitory and non-chronic impairments are not covered by the ADA, 29 C.F.R. § 1630.2(j), the extent and severity of the limitations plaintiff faced are factual questions not properly decided on a motion to dismiss.

Defendants raise the misplaced contention that plaintiff has *not* alleged that she was substantially limited in her ability to work, based on the allegation in her original complaint that she was "nonetheless able to perform the essential requisites of her job." (Defendant's Memorandum of Law in Support of Motion to Dismiss, p. 4, *quoting* Complaint, ¶ 1). The defendant's argument is disingenuous because it disregards the fact that an ADA plaintiff's prima facie case must include an allegation that she is able, with or without reasonable accommodations, to perform the essential functions of her job. *See* 42 U.S.C. §§ 12111, 12112 (1995). The statute explicitly states that "reasonable accommodations" can include "job restructuring, part-time or modified work schedules." *Id.* § 12111(9)(B). Thus, plaintiff's complaint can be read to allege that the complications she experienced constituted physical impairments that restricted her ability to work in the absence of reasonable accommodations, but that with a flexible schedule equivalent to that offered to nonpregnant employees who were similarly incapacitated, plaintiff would have been able to perform the essential duties of her position. (Amended Complaint, ¶ 29). These allegations are sufficient to make out a prima facie case under the statute.

Finally, I note that the ADA offers plaintiff a second avenue to establish a "disability." Plaintiff may argue that although she was not in fact substantially impaired, she was regarded by EHG as suffering from a disability. *See* 42 U.S.C. § 12102(2)(C) (1995). This more subjective definition of disability is available to a plaintiff who suffers employment discrimination not on the basis of an actual disability but on the basis of myths, fears, and stereotypes that lead her employer to the erroneous conclusion that

she is substantially impaired. *Greenberg v. New York State*, 919 F.Supp. 637, 641 (E.D.N.Y.1996) (citing *Cook v. Rhode Island Dep't of Mental Health, Retardation & Hosps.*, 10 F.3d 17, 23 (1st Cir.1993) and 29 C.F.R. § 1630, app.) ("Thus, 'if an individual can show that an employer ... made an employment decision because of a perception of disability based on myth, fear or stereotype, the individual will satisfy the "regarded as" part of the definition of disability.' "). Plaintiff's complaint therefore might alternatively be construed to make out a claim under the more subjective prong of the disability definition.

For all of the above reasons, I cannot conclude that plaintiff can prove no set of facts that would entitle her to relief under the ADA. Defendant's motion to dismiss plaintiff's ADA claim is therefore denied.

### III. Plaintiff's Claims of Disability Discrimination under the City HRL and State HRL [3]

■ Defendant EHG asserts that plaintiff cannot establish a claim for disability discrimination under the City HRL and State HRL because she cannot make the required demonstration that despite her condition she was reasonably able to perform her duties. In particular, defendant cites *Clark v. Cargill, Inc.*, 206 A.D.2d 870, 615 N.Y.S.2d 210 (4th Dep't 1994) for the proposition that:

> a physical condition that prevents an employee from reporting to work and that requires an employee to miss an unacceptably high number of days of work is not a disability within the meaning of Executive Law § 292(21).

*Id.*, 615 N.Y.S.2d at 211. Because plaintiff acknowledges that defendant Durham told her she was being terminated for taking too many days off, defendant contends that she has conceded that she was not reasonably able to attend to her duties and therefore cannot state a claim under the State HRL and City HRL.

In *McEniry v. Landi*, 84 N.Y.2d 554, 644 N.E.2d 1019, 620 N.Y.S.2d 328 (1994), the New York Court of Appeals indicated that the inquiry into whether a particular employee was able to perform her duties despite her disability is necessarily an individualized one. *Id.* 644 N.E.2d at 1022, 620 N.Y.S.2d at 331. The court indicated that the inquiry did not end with the defendant employer's assertion that the plaintiff was fired because his alcoholism prevented him from coming to work "on an inordinate number of occasions," but rather began there. *Id.*

In the present case, plaintiff does not admit that she was taking too many days off but asserts that this was the reason proffered by defendant in justification of its decision to terminate her. The plaintiff does allege that she was able to perform the essential responsibilities associated with her position; she also alleges that defendant EHG accommodated other incapacitated employees who required a similar number of days off for different ailments. (Amended Complaint, ¶ 29). Accepting these allegations as true, I conclude that plaintiff is not barred from stating a claim under the State HRL and City HRL. Plaintiff may be able to prove that despite her absences she was able to keep up with the demands of her position. Further, plaintiff may be able to demonstrate that her absences were not excessive in light of defendant's alleged policy of accommodating other incapacitated employees with similar attendance records. In light of these possibilities, I cannot at this time say that plaintiff can prove no set of facts in support of her claim, and defendant's motion to dismiss plaintiff's claims of disability discrimination under the State HRL and City HRL is therefore denied.

### IV. Individual Liability under Title VII and the ADA

■ Defendant EHG moves to dismiss the plaintiff's first and second claims for relief against individual defendants Heslin and Durham on the grounds that individuals are not subject to liability under either Title VII

---

**3.** Defendant also advances an argument in its reply brief that pregnancy is not a disability under the State HRL and City HRL because it is not a disability under the ADA. (Reply Memorandum of Law in Support of the Motion to Dismiss, p. 13). Because I have found that dismissal is not appropriate with respect to the ADA claim, this argument is obviously precluded.

or the ADA. Because I agree with defendant that, under the Second Circuit's analysis, neither statute provides for individual liability, defendant's motion to dismiss on this ground is granted.

■ As even plaintiff acknowledges, the controlling case with respect to individual liability under Title VII, *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995), provides that individual defendants—even those with supervisory control—may not be held personally liable for alleged violations of Title VII. *Id.* at 1313. The Second Circuit's reasoning in *Tomka* is equally applicable to the question of individual liability under the ADA as well.

The *Tomka* court noted that Title VII defined "employer" as

a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person.

*Id.* (quoting 42 U.S.C. § 2000e(b)). The court agreed with the Ninth Circuit that it was "inconceivable" that Congress would define employer in a way intended to protect small businesses while simultaneously permitting civil liability to run against individual employees. *Id.* at 1314 (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994)). The court concluded that the inclusion of the word "agent" in the definition of employer was meant to impose liability on the employing entity in accordance with principles of respondeat superior rather than to expose individuals to the financial burdens of defending against employment discrimination suits.

While the Second Circuit has not yet addressed individual liability in the context of an ADA claim, the court's holding in *Tomka* clearly mandates the rejection of personal liability under the ADA as well. The ADA defines "employer" in terms identical to those appearing in Title VII:

The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person.

42 U.S.C. § 12111(5)(A). It would be equally incongruous for Congress to exempt small firms from liability for disability discrimination while subjecting individual employees to full liability for the same conduct. As other courts have recognized, the arguments against individual liability apply with equal force to the mirror-image statutory provisions of Title VII and the ADA. *See E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir.1995) ("Courts routinely apply arguments regarding individual liability to [Title VII and the ADA] interchangeably."); *Altman v. New York City Health and Hospitals Corp.*, 903 F.Supp. 503, 508 (S.D.N.Y.1995) (rejecting individual liability under the ADA based upon reasoning "which is drawn from several other recent decisions barring individual liability under other federal antidiscrimination statutes"); *Stephens v. Kay Management Co.*, 907 F.Supp. 169, 171 (E.D.Va.1995) ("[D]ecisions interpreting the ADEA and Title VII provide useful assistance in interpreting similar provisions of the ADA respecting the extent to which a supervisor may be held personally liable for employment decisions.").

Because the Court of Appeals analysis clearly precludes individual liability under the ADA or Title VII, plaintiff fails to state a claim against individual defendants Durham and Heslin under either statute. *See Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271, 274 (S.D.N.Y.1996) ("[T]he ADA, like Title VII, does not provide for liability by individual employees."). Defendant's motion to dismiss plaintiff's first and second claims as to defendants Durham and Heslin is therefore granted.

## V. *Individual Liability under the State HRL*

■ Unfortunately, the dismissal of plaintiff's claim against the individual defendants under the federal statutes offers no guidance as to the viability of her claim against the individual defendants under the state HRL. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995) (finding that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII, but are subject to suit in their personal capacities under the

HRL). The New York Court of Appeals established the standard for individual liability under the State HRL in *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984), holding that an employee is not individually subject to suit under the HRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.*

Plaintiff's amended complaint contains no allegation that either defendant Durham or defendant Heslin had any ownership interest in the company. Whether the Amended Complaint alleges facts from which it can be inferred that either defendant had the power to do more than carry out personnel decisions made by others is a closer question. With respect to defendant Durham, plaintiff alleges only: (1) that Durham "is a manager for the Group and is an 'agent' of the Group...." (Amended Complaint, ¶ 6); (2) that Durham approved plaintiff's February 14, 1994 absence (Amended Complaint, ¶ 15); (3) that Durham was a participant in the March 9, 1994 meeting at which plaintiff was asked if she wanted to go on disability leave or take a leave of absence (Amended Complaint, ¶ 20); and (4) that Durham informed plaintiff that she was terminated on March 16, 1994, attributing the decision to Heslin and assuring plaintiff that the decision to terminate plaintiff was not Durham's decision. (Amended Complaint, ¶ 23). Nowhere does plaintiff allege that Durham reviewed plaintiff's performance, that she had authority to hire or fire anyone, including plaintiff, or that she was able to make recommendations which would affect plaintiff's status with EHG. Other than by naming her as a defendant in the suit, plaintiff gives no indication that she disbelieves Durham's disclaimer of responsibility for the decision to terminate plaintiff.

In addition, courts considering the appropriateness of personal liability have examined § 296(6) of the HRL, which makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec. Law § 296(6) (McKinney 1993). Courts have

relied on this language in concluding that a defendant who actually participates in the conduct giving rise to a discrimination claim may · be held personally liable under the HRL. *See, e.g., Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020, 1028 (S.D.N.Y.1993) (refusing to dismiss State HRL claim against individual defendant who· directly "threatened the plaintiffs and other women with termination, discipline, or economic loss if they were to complain to· upper management"); *Poulsen v. North Tonawanda*, ·811 F.Supp. 884, 900 · (W.D.N.Y.1993) (holding that because defendant was the actual perpetrator of the sexual harassment, he was subject to individual liability under the State HRL as an aider and abettor); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 135–36 (N.D.N.Y.1990) ("Even if the defendants were not corporate agents of [defendant corporation], plaintiff's allegations support the conclusion that defendants aided or abetted the acts which plaintiff claims violated the HRL. Thus, defendants' motion to dismiss plaintiff's HRL claim on this ground is denied.").

In the present case, the alleged discrimination consisted of a single action: the termination of the plaintiff's employment because she was pregnant. Whether defendant Durham "aided and abetted" the termination decision therefore turns on the same types of factors as whether she had the power to do more than carry out the personnel decisions of others. Based on plaintiff's allegations, defendant Durham's only involvement in the discrimination consisted of her communication of the termination to plaintiff. This is not conduct that rises to the level of aiding and abetting, and is unlike the direct, purposeful participation of defendants whom other courts have found to be subject to individual liability as aiders and abettors. To hold otherwise would subject all employees to individual liability in contravention of *Patrowich*, because a corporation can only act vicariously, through its agents. Without any allegation that defendant Durham was directly involved in the charged discrimination or that she occupied a position of authority with regard to plaintiff's hiring or firing, the motion to dismiss the State HRL claim against individual defendant Durham must be grant-

ed, with leave to replead within twenty days of the date of this Order.

With respect to defendant Heslin, the allegations of plaintiff's Amended Complaint are barely sufficient to survive defendant's motion to dismiss. Plaintiff alleges: (1) that Heslin was "a manager for the Group and acted in the capacity of Vice President for the Group during Ms. Cerrato's employment and is an 'agent' of the Hospital...." (Amended Complaint, ¶ 7); and (2) that defendant Durham reported a conversation with defendant Heslin in which Heslin said that "plaintiff had taken too many days off and had to be let go," following which plaintiff was in fact fired. (Amended Complaint, ¶ 23). From these allegations, a trier of fact could infer that Heslin, as an acting Vice President, had the power to do more than carry out the personnel decisions of others. In fact, these allegations suggest that Ms. Heslin was the actual decisionmaker. Ms. Heslin's alleged participation in the discrimination is therefore more like the actions taken by the individual defendants whom courts have subjected to individual liability as aiders and abettors under the State HRL. Accepting, as I must, plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, defendant's motion to dismiss the state HRL claim against defendant Heslin is denied.

## VI. *The Compelled Leave of Absence Claim*

Section 296(1)(g) of the State HRL provides that it is unlawful

> For an employer to compel an employee who is pregnant to take a leave of absence, unless the employee is prevented by such pregnancy from performing the activities involved in the job or occupation in a reasonable manner.

N.Y.Exec.Law § 296(6) (McKinney 1993). Defendant moves to dismiss plaintiff's claim under this section on the grounds that plaintiff does not allege that she was compelled to take a leave of absence but rather is complaining of an allegedly discriminatory termination. Because I find that to grant defendant's motion on this ground would elevate form over substance, the motion is denied.

The plaintiff in this case alleges that defendant Durham and another manager asked her if she wanted to go on disability leave or take a leave of absence. (Amended Complaint, ¶ 20). Defendant refused, pointing out that her medical adviser had not advised her to stop working (Amended Complaint, ¶ 20). One week later, plaintiff was terminated (Amended Complaint, ¶ 23).

Although it is true that plaintiff did not actually take a leave of absence, I believe that the statutory cause of action is neither so narrow nor so formalistic as to preclude a plaintiff whose refusal to take a leave of absence led to her dismissal from pressing her claim. Plaintiff has alleged facts from which the inference can be drawn that her refusal to accept the leave of absence was the direct cause of her termination. Defendant's motion to dismiss on this ground is therefore denied.

### *CONCLUSION*

For the reasons stated above, defendant's motion to dismiss is granted in part and denied in part: (1) defendants' motion to dismiss plaintiff's second claim (under the ADA) is denied; (2) defendants' motion to dismiss plaintiff's fourth and seventh claims (under N.Y.Exec.Law § 296(1)(a) and the New York City Administrative Code, Title 8, § 8–107(1)(a), respectively) is denied; (3) defendants' motion to dismiss plaintiff's claims one through five as to the individual defendants is:

> (a) granted as to both defendants as to claims one and two (Title VII and the ADA, respectively);

> (b) granted as to defendant Durham as to claims three, four, and five (N.Y.Exec. Law §§ 296(1)(a) and (g)), with leave to replead within twenty days of the date of this Order;

> (c) denied as to defendant Heslin as to claims three, four, and five (N.Y.Exec.Law §§ 296(1)(a) and (g)); and

(4) defendants' motion to dismiss plaintiff's fifth claim (N.Y.Exec.Law § 296(1)(g)) is denied.

Counsel shall advise the court by letter, not later than September 27, 1996, of a dis-

covery schedule and the anticipated progress of the case.

SO ORDERED.