Alma **HERNANDEZ**, Plaintiff,

v.

**CITY OF HARTFORD**, Defendant.

**Civ. No. 3:95CV1517 (PCD).**

United States District Court,
D. Connecticut.

March 14, 1997.

---

Daniel S. Fabricant, Miniter & Associates, Hartford, CT, Barbara E. Gardner, Manchester, CT, for Plaintiff.

Helen Apostolidis, Karen Kirsten Buffkin, Corporation Counsel's Office, Hartford, CT, for Defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Defendant moves to dismiss, or in the alternative for summary judgment pursuant to Fed. R.Civ.P. 12(b)(6) and 56(c). The parties have submitted matters outside the pleadings, and thus the 12(b)(6) motion is converted into one for summary judgment. For the following reasons, summary judgment is denied on the grounds that there are genuine issues of material fact.

### I. BACKGROUND

Alma Hernandez ("plaintiff") is employed by the City of Hartford ("defendant") as an Administrative Assistant in the Grants and Management Services Program of the Health Department ("department"). Plaintiff was pregnant and due to give birth on June 22, 1995. On January 6, 1995, her obstetrician discovered that uterine fibroids complicated her pregnancy.

Plaintiff claims that on May 4, 1995, she advised her immediate supervisor, Keith Wilder ("Wilder"), that she experienced premature labor. On May 9, 1995, plaintiff's

obstetrician prepared a note indicating the physical limitations plaintiff's condition imposed on her ability to work.[1] Through this note, plaintiff sought permission from Wilder to work at home part-time for the remainder of her pregnancy. She asserts that this alternative was vital to the management of her condition because working at home would have enabled her to "avoid the stress associated with the work environment ... [and allowed her] to keep her heart rate at an acceptable level for taking ..." her premature labor medication. (Am.Compl.¶ 7.)

Plaintiff claims that Wilder reviewed her doctor's recommendations and they agreed that she would work Tuesdays and Thursdays out of her home. Assistant Health Director Richard Colpitts ("Colpitts") approved this plan. Final approval from Acting Health Director Katherine McCormack ("McCormack") was sought, pending which plaintiff continued to work, performing all her duties and responsibilities.

On June 6, 1995, Wilder informed plaintiff that McCormack denied her request to work at home. Although the baby was born healthy eleven days later, plaintiff suffered complications in the birth that caused her to be out of work ten weeks.

Plaintiff avers that her pre-term labor, a complication resulting from pregnancy, constituted a disability under § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (1994), and Title II of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 (1994) (the "Acts"). She complains that defendant's denial of her request to work at home was willful and discriminatory in violation of the Rehabilitation Act and the ADA. She alleges physical and emotional pain and suffering. She also claims defendant was negligent and inflicted emotional distress. She seeks damages, attorney's fees and costs.

Defendant moves for summary judgment on the ground that plaintiff was not disabled, was not a qualified individual with a disability, and was reasonably accommodated. Additionally, defendant argues that plaintiff's claim is incognizable under Title II of the ADA, that compensatory and punitive damages are also improper in cases under the Acts, and that a jury trial is not available. Lastly, defendant claims the court lacks subject matter jurisdiction over her emotional distress claim.

## II. DISCUSSION

### A. Standard of Review

Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative for summary judgment pursuant to Fed. R.Civ.P. 56(c). Rule 12(b)(6) provides that "if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." As the motion has been briefed as a motion for summary judgment by both parties, each of which has submitted materials outside the pleadings, the parties have had a reasonable opportunity to present Rule 56 material. Accordingly, the motion shall be treated as a motion for summary judgment.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be rendered when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The moving party must establish that no relevant facts are in dispute. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *accord Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*);

---

1. The note read: "TO WHOM IT MAY CONCERN: Alma Hernandez ia [sic] an obstetrical patient of mine. Due to signs of premature labor, she should be able to work at home as much as possible. She should avoid prolonged standing for greater than 5 minute periods. She cannot do any weight bearing. She may require periods of rest during the day to allow her heart rate to decrease." (Pl.'s Ex. E.)

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 443 (2d Cir.1980). Therefore, not only must there be no genuine issue as to evidentiary facts, but there must be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[2]

## B. The Rehabilitation Act and the ADA

■ To sustain a claim under § 504 of the Rehabilitation Act,[3] plaintiff must establish that: (1) she was an individual with a disability within the meaning of the Act; (2) she was otherwise qualified, with or without reasonable accommodation, to perform her job; (3) she was excluded from the job solely because of her disability; and (4) her employer received federal funding. *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 135 (2d Cir.1995). Likewise, under Title II of the ADA,[4] plaintiff must establish that: (1) she was a disabled person within the meaning of the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) she was discriminated against in her employment on account of her disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). The language of the two statutes is substantially the same. The same analysis applies, *Doe v. University of Md. Medical System Corp.*, 50 F.3d 1261, 1265 n. 9 (4th Cir.1995); see 42 U.S.C. §§ 12117(b) and 12133 (1994); 29 U.S.C. § 794a(2) (1994), and, for practical purposes, the standards are the same.

### 1. Disability Under the Rehabilitation Act and the ADA

Defendant argues that plaintiff's premature labor was not a disability within the meaning of the Acts. Under the Acts, an "individual with a disability ... [is] any person who ... has a physical or mental impairment which substantially limits one or more of such person's major life activities...." 29 U.S.C. § 706(8)(b)(i)(1994). *See* 42 U.S.C. § 12102(2)(A) (1994). The regulations promulgated by the Equal Employment Opportunities Commission ("EEOC") clarify the language of the Acts.[5]

---

**2.** Initially, plaintiff argues that because deposition transcripts, plaintiff's employment records and correspondence between plaintiff and various members of her department attached to defendant's motion for summary judgment are unsworn and unauthenticated, they cannot be considered. *See* Fed.R.Civ.P. 56(e); *see also S.E.C. v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 62 (D.Conn.1988), *aff'd*, 891 F.2d 457 (2d Cir.1989), *cert. denied*, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 674 (1990); *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4 (2d Cir.1970). As a matter of law, unsigned, unsworn, unauthenticated transcripts including other materials that might be admissible at trial are not generally admissible. *Electronics Warehouse*, 689 F.Supp. at 62 n. 12. "To be admissible, it must be shown that the material can be reduced to admissible form." *Id.* After plaintiff filed her memorandum in opposition, defendant complied with Rule 56(e) and certified the materials it wishes considered. Accordingly, the Rule 56(e) requirements are met.

**3.** The Rehabilitation Act provides that "[n]o otherwise qualified handicapped individual with a disability ... as defined in section 706(8) of this title, shall, solely be reason of her or his disability ... be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.

**4.** Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied of the services, programs, or activities of any entity, or be subjected to the discrimination by any such entity." 42 U.S.C. § 12132 (1994).

**5.** 29 C.F.R. § 1630.2 *et seq.* (1996) sets forth the following definitions:

(h) *Physical or mental impairment* (i) Any physiological disorder, or condition ... affecting one or more of the following body systems: ... musculoskeletal ... reproductive, genito-urinary....

(i) *Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, ... and working.

(j) *Substantially limits*—(1) ... means: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

### a. Premature Labor as a Physical Impairment.

■ Defendant maintains that plaintiff's pregnancy was not a physical impairment within the meaning of the Acts. Plaintiff claims a physical impairment in her premature labor, a physiological disorder, not her pregnancy.

Pregnancy and related medical conditions have been held not to be physical impairments. *See, e.g., Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 626 (S.D.N.Y.1996); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H.1995); *Byerly v. Herr Foods, Inc.,* 1993 WL 101196 at *4 (E.D.Pa. April 6, 1993). Conversely, a distinction has been noted between pregnancy and complications caused by pregnancy and thus "under particular circumstances, [a] pregnancy-related condition can constitute a 'disability' within the meaning of the ADA." *Cerrato v. Durham,* 941 F.Supp. 388, 392 (S.D.N.Y.1996). *See Garrett v. Chicago School Reform Board of Trustees,* No. 95 C 7341, 1996 WL 411319, at *2 (N.D.Ill. July 19, 1996).

In *Cerrato,* plaintiff sued under the ADA alleging that her employment was terminated based on her pregnancy-related conditions. Defendant moved to dismiss, arguing that pregnancy is not a physical impairment under the ADA. Plaintiff alleged, however, that she suffered from spotting, leaking, cramping and dizziness—all conditions of her pregnancy. The court held that plaintiff alleged facts sufficient to conclude that she suffered impairment of a bodily system, i.e., the reproductive system. *Id.* at 393.

The *Cerrato* court relied on the current state of medical knowledge to distinguish between pregnancy and pregnancy-related complications. *Id.* It noted that although the American Medical Association's Council on Scientific Affairs ("Council") recommended "that most women with uncomplicated pregnancies 'should be able .... to continue productive work until the onset of labor,'" the Council "listed a number of 'substantial complications' of pregnancy that 'may be disabling for further work.'" *Id.* (quoting Council on Scientific Affairs, *Effects of Pregnancy on Work Performance,* 251 JAMA 1995, 1997

(1984)). Among those complications were the "premature rupture of membranes, vaginal bleeding, ... risk of premature [birth] ... and a number of others." *Id.* The court's analysis is compelling.

Furthermore, the EEOC regulations call for the same conclusion. Pregnancy is not considered a physiological disorder under 29 C.F.R.App. § 1630.2(h)(1) (1996) ("conditions, such as pregnancy, that are not the result of a physiological disorder are not impairments."). However, the regulation does not explicitly exclude pregnancy-related impairments, provided they are the result of a physiological disorder. "Physiologic" is defined as "characteristic of or conforming to the normal functioning or state of the body or a tissue or organ." DORLAND'S MEDICAL DICTIONARY (27th ed.1988). Thus, a physiological disorder is an abnormal functioning of the body or a tissue or organ. Clearly, plaintiff's condition was not a function of a normal pregnancy. It was a physiological disorder. As a matter of law, plaintiff alleges a physical impairment. Genuine issues of fact remaining as to the nature and extent of her impairment.

### b. Substantially Limits Major Life Activity

■ Plaintiff alleges that her premature labor substantially limited the major life activity of working. According to plaintiff, this condition diminished her capacity to respond immediately to emergencies and handle unexpected interruptions at work. Defendant argues that plaintiff's premature labor was of limited duration, intermittent and episodic and furthermore that plaintiff performed her job. Therefore, even if premature labor is considered a physical impairment, it did not substantially limit her ability to work.

Where the major life activity in question is working, 29 C.F.R. § 1630.2(j)(3)(i) controls:

[T]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job

does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).

■ In determining if an individual is substantially limited, the court considers "(i) [t]he nature and severity of the impairment; (ii)[t]he duration or expected duration of the impairment; and (iii)[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Intermittent, episodic impairments are not considered disabilities. *See Vande Zande v. Wisc. Dept. of Admin.*, 44 F.3d 538, 544 (7th Cir.1995); *see also* 29 C.F.R.App. § 1630.2(j). Genuine issues of material fact remain as to whether plaintiff's premature labor substantially limited her ability to work.

Plaintiff's condition was not an intermittent, episodic or transitory impairment, nor was it a "non-chronic impairments of short duration, with little or no long term or permanent impact." 29 C.F.R.App. § 1630.2(j). *See Evans v. City of Dallas*, 861 F.2d 846, 852 (5th Cir.1988). Plaintiff's impairment existed throughout her pregnancy. She controlled it only through the use of medication. Arguably her impairment was of limited duration, as related to her pregnancy, itself a condition of limited duration.

The deposition transcripts and other evidence portray plaintiff's condition as substantially limiting her ability to perform certain administrative tasks. She could not respond to phone calls and interruptions in the office when her blood pressure was too high for her to take her medication. (Hernandez Af.f at ¶ 10; Hernandez Dep. at 79–80.) If she remained at work, she was unable to take her medication and risked the possibility of premature child birth.

The nature and severity of plaintiff's impairment is evidenced in the note from her gynecologist. (Pl.'s Ex. E.) It confirmed the nature of her condition, the dangers involved and suggested that she work at home because of her condition. (Id.)

The fact that plaintiff continued to perform her job in spite of her allegation that her disability substantially impaired her ability to work is without consequence. She was only able to continue working if she took time away from her work. It is, in part, the need to take time away from work which created the alleged substantial impairment.

Accordingly, there are genuine issues of material fact as to whether plaintiff was substantially limited in her ability to work.

## 2. Otherwise qualified

■ Defendant argues that even if plaintiff had a disability within the meaning of the Acts, plaintiff can prove no facts which tend to show she was "otherwise qualified" for her job. Plaintiff maintains that the record shows she was "otherwise qualified."

■ "[A]n individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without reasonable accommodation." *Borkowski*, 63 F.3d at 135. "The essential functions are those functions that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation." 29 C.F.R.App. § 1630.2(n). Determining the essential functions of a job requires a fact-specific inquiry into the employer's description of the job and how the job is actually performed. *Borkowski*, 63 F.3d at 140.

Referencing plaintiff's deposition, defendant asserts that there is no dispute that the essential functions of plaintiff's job included face-to-face communication with other employees, handling emergencies and answering telephone calls.[6] Plaintiff testified that on a daily basis her job included these duties. (Hernandez Dep. at 5–9.) She did not testify that these were essential functions of her job. That these were daily duties does not establish that they were "essential functions." A reasonable inference can be drawn that while

6. Plaintiff contends that defendant bears the burden of identifying the "essential functions" of plaintiff's job. To the contrary, it is plaintiff's duty, in establishing her prima facie case, to show that she was "otherwise qualified," which includes establishing the "essential functions" of her job. *See Borkowski* at 137. In challenging the prima facie case, defendant bears the burden of showing that there is no disputed issue as to the essential functions of plaintiff's job.

these were daily tasks with which plaintiff dealt, they were not necessarily "essential."

Both Colpitts and Wilder, who reviewed plaintiff's request to work at home, found the request acceptable. (Wilder Dep. at 10–12.) It would thus be reasonable to infer that the enumerated functions were not essential.

A disputed issue of fact thus remains as to whether plaintiff was "otherwise qualified." Therefore, summary judgment on this ground cannot be granted.

■ Even if the essential functions of plaintiff's job included face-to face contact and the handling of emergencies, defendant has not shown that no disputed issue of fact exists as to whether plaintiff's request was a reasonable accommodation. Defendant argues that if it had approved plaintiff's request, plaintiff would not have been able to perform the essential functions of her position, and therefore, as a matter of law, her requested accommodation was unreasonable. Defendant further argues that irrespectively, it offered plaintiff a reasonable accommodation. Plaintiff argues that the accommodation she requested was reasonable, and furthermore argues that the alleged accommodations made by defendants were insufficient.

■ While the Acts do not require an employer to eliminate essential functions of a job, a reasonable accommodation may include "job restructuring, part-time or modified work schedules.... " 34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b) (1996). Such restructuring may not, however, cause undue hardship on defendant's operation. *See Id; See also Borkowski,* 63 F.3d at 136. "[I]f an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Borkowski,* 63 F.3d at 139. In addition, the costs of the accommodation must not facially exceed the benefits. *Id.* "Once the plaintiff has done this she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Id.*

Plaintiff has presented facts which make a prima facie showing that an effective accommodation exists which would render her otherwise qualified. Furthermore, the costs of the accommodation have not facially been shown to exceed the benefits.

In support of its argument that plaintiff's request to work at home was unreasonable, defendant cites *Vande Zande,* 44 F.3d 538, in which the Seventh Circuit rejected plaintiff's argument that working at home full-time for an eight-week period was a reasonable accommodation, noting that "[n]o jury ... could in our view be permitted to stretch the concept of 'reasonable accommodation' so far." *Vande Zande,* 44 F.3d at 544. The court concluded that only in an extraordinary case could an employee create a triable issue of an employer's refusal to allow the employee to work at home. *Id.* at 544–45.

*Vande Zande* is not persuasive. First of all, *Vande Zande* involved an employee who requested to work at home full-time. Secondly, the Seventh Circuit's nearly *per se* rule regarding "at home" work flies in the face of the requirement of a case-by-case, fact-specific inquiry.

Defendant has not shown that there are no genuine issues of fact in dispute as to whether the requested accommodation was an undue burden. The fact that both Wilder and Colpitts approved the plan raises a factual issue as to whether the proposed accommodation would have imposed an undue burden.

Defendant argues, in the alternative, that it did provide plaintiff with a reasonable accommodation by allowing her to close her door or leave the office when her blood pressure was too high to take her medication. Whether this was a reasonable accommodation in light of plaintiff's condition is a question of fact for the jury.

Accordingly, defendant's motion for summary judgment on the grounds that plaintiff's requested accommodation was not reasonable, or that defendant offered plaintiff a reasonable accommodation is denied.

*C. Application of Title II of the ADA to Employment Discrimination*

■ Defendant claims it is entitled to summary judgment on plaintiff's ADA claim

because, as related to her employment, her claim is not cognizable under Title II. Plaintiff retorts that Title II encompasses suits for employment discrimination.

On its face, Title II prohibits discrimination in "public services." *See* 42 U.S.C. § 12132, *supra* note 4 at 5. A plain reading of the section does not reveal whether Title II covers employment discrimination addressed more specifically in Title I.[7] The regulations under and the legislative history of ADA Title II make it clear, however, that § 12132 prohibits employment discrimination by public entities on the basis of disability. *Ethridge v. Alabama,* 847 F.Supp. 903, 905–06 (M.D.Ala.1993).

"[T]he regulations ... [proclaim] that the prohibition against discrimination by public entities includes employment discrimination." *Petersen v. Univ. of Wisc. Bd. of Regents,* 818 F.Supp. 1276, 1279 (W.D.Wis.1993). *See* 28 C.F.R. § 35.140(a) (1996) ("No qualified individual with a disability shall ... be subjected to discrimination in employment under any service program, or activity conducted by a public entity."). Furthermore, § 35.140(b)(1), the regulation by which employment discrimination is judged under Title II, cross-references the Title [8] standards. *See Petersen,* 818 F.Supp. at 1278. Section (b)(2) goes a step further by stating that "if th[e] public entity is not also subject to the jurisdiction of title I ..., [f]or purposes of this part, the requirements of section 504 of the Rehabilitation Act of 1973 ... apply." 28 U.S.C. § 35.140(b)(2). The legislative history warrants the same conclusion.[9]

Accordingly, "[t]here is no language in the statute or regulations that would sustain ... [the] position [that] ... plaintiff is precluded

from bringing his claim under Title II of the ADA." *Petersen,* 818 F.Supp. 1276, 1278 (W.D.Wis.1993). *See Graboski v. Guiliani,* 937 F.Supp. 258, 268–69 (S.D.N.Y.1996); *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297, 1309–10 (S.D.Tex.1996); *Finley v. Giacobbe,* 827 F.Supp. 215, 219–20 (S.D.N.Y. 1993). Summary judgment on plaintiff's ADA Title II claim is therefore denied.

**D. Compensatory and Punitive Damages Under the Rehabilitation Act and the ADA**

Defendant next asserts that neither Act permits an award of compensatory or punitive damages. Plaintiff contends that the Acts permit such relief.

■■■ "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Franklin v. Gwinnett County Public Sch.,* 503 U.S. 60, 66, 112 S.Ct. 1028, 1033, 117 L.Ed.2d 208 (1992). In so holding, the Court found that since Congress enacted Title IX of the Civil Rights Act of 1964 knowing of the traditional presumption in favor of courts providing any remedy available, it contemplated the availability of money damages. *Id.* at 72, 73, 112 S.Ct. at 1036, 1036–37.

■■■ Since *Franklin,* this court held that "because of the relationship among Title IX, Title VI and § 504, the Supreme Court's determination that money damages are available under Title IX is dispositive of whether money damages are available under § 504." *DeLeo v. City of Stamford,* 919 F.Supp. 70, 73 (D.Conn.1995). Accordingly, "the analysis

---

7. Title I provides in pertinent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a) (1994).

8. 28 C.F.R. § 35.140(b)(1) states "[f]or purposes of this part, the requirements of Title I of the Act, as established by the regulations of the Equal Opportunity Employment Commission in 29 C.F.R. 1630, apply to employment in any service,

program, or activity conducted by any public entity if that entity is also subjected to the jurisdiction of Title I."

9. "The Committee has chosen not to list all the types of actions that are included within the term 'discrimination', as was done in titles I and II, because this title essentially simply extends the anti-discrimination prohibition embodied in section 504 to all the actions of state and local governments." H. Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 367.

developed in *Franklin* governs the inquiry under the Rehabilitation Act as well and inescapably leads to the conclusion that both compensatory and punitive damages are available." *Id.* The vast majority of courts that addressed the issue since *Franklin* concur.[10] *See Id.* at 64–65, n. 3, 4, 112 S.Ct. at 1031–32, n. 3, 4.

As to whether compensatory and punitive damages are available under ADA, "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133. Since claims for compensatory and punitive damages are proper under § 504 of the Rehabilitation Act, they are likewise appropriate under ADA. Defendant's motion for summary judgment on plaintiff's compensatory and punitive damages claims is denied.

### E. Plaintiff's Right to a Jury Trial Under the Rehabilitation Act and Title II of the ADA

Plaintiff demands a jury trial for its claims under the Acts. Defendant contends that neither of the Acts authorize a jury trial.

 Neither the Rehabilitation Act nor Title II of the ADA indicates on its face whether a jury trial is available to litigants. *DeLeo,* 919 F.Supp. at 76. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(2). Therefore, since actions under both the Acts "allow plaintiff the full spectrum of equitable and legal remedies," defendant's motion opposing plaintiff's request for a jury trial is denied. *Id.* (citing *Franklin,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208). The Seventh Amendment protects plaintiff's right to trial. *See* 42 U.S.C. § 1981a(2) (1994).

### F. Jurisdiction Over Plaintiff's Emotional Distress Claim

 Defendant argues that the court lacks jurisdiction over plaintiff's state law claim of negligent infliction of emotional distress. Plaintiff maintains that pendant jurisdiction applies.

 As to whether plaintiff's state claim is within the court's subject matter jurisdiction, 28 U.S.C. § 1367 (1994) controls.[11] For federal and state claims to be part of the same case or controversy, they must derive from a common nucleus of operative fact. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). "A federal court has jurisdiction to hear a plaintiff's state claims together with his federal claims if 'considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding …'" *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105, 109 (S.D.N.Y.1993) (quoting *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138).

The operative facts underlying plaintiff's claims under the Acts are identical to those under the negligent infliction of emotional distress claim. Although the state law claim may require additional proof, this alone is not enough to preclude the exercise of pendant jurisdiction. *Id.* Furthermore, plaintiff's claim for negligent infliction of emotional distress does not raise novel issues of state law. *Cf. Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 553 (D.Conn.1996), *aff'd,* 104 F.3d 355 (2d Cir.1996). *See Buckman v. People Express, Inc.,* 205 Conn. 166, 173, 530 A.2d 596, 600 (1987); *Morris v. Hartford Courant Co.,* 200 Conn. 676, 682–83, 513 A.2d

---

**10.** In support of its argument that compensatory and punitive damages are not available under the Rehabilitation Act, defendant cites numerous authorities relied on in *Tyler v. City of Manhattan,* 849 F.Supp. 1442, 1444 (D.Kan.1994), which found compensatory damages unavailable under the ADA. Defendant fails to recognize that *Tyler* is distinguishable from *Franklin* on the grounds that *Tyler* involved a claim based on *non-intentional* discrimination, and furthermore, injunctive relief was the most appropriate form of relief. *Franklin,* similar to the present case, dealt with *intentional* discrimination where equitable relief was inadequate.

**11.** [I]n any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

66, 69–70 (1986). Therefore, summary judgment on plaintiff's state law claims is denied.

*III. CONCLUSION*

Accordingly, defendant's motion to dismiss and for summary judgment (docs. 12–1 and 12–2) are DENIED.

SO ORDERED.