Gladys **NAVARRO POMARES,** et al., Plaintiffs,

v.

**PFIZER CORP., et al., Defendants.**

No. Civ. 98–2110(JP).

United States District Court, D. Puerto Rico.

May 11, 2000.

Manuel Porro–Vizcarra, Guaynabo, PR, for plaintiffs.

Rosa M. Mendez–Santoni, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for defendants.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendant Pfizer Corporation's ("Pfizer") Motion for Summary Judgment (**docket No. 12**) and Plaintiffs' Opposition thereto (docket No. 17). Plaintiffs Gladys Navarro Pomares ("Navarro"), Antonio Hernández, and the conjugal partnership constituted between them bring this action under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 – 2654. Plaintiffs claim that Defendants violated section 2615(a)(1) by unlawfully denying Navarro benefits to which she was entitled under the FMLA, and that Defendants also breached section 2615(a)(2) by retaliating against Navarro for exercising her rights under the FMLA. In addition, Plaintiffs invoke this Court's supplemental jurisdiction to assert a claim under Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31, § 5141, for emotional and mental distress.

## II. UNCONTESTED FACTS

The following facts are uncontested:

1. Pfizer is an employer subject to the provisions of the FMLA.

2. Navarro was an employee within the meaning of the FMLA, having worked for Pfizer more than 1,250 hours during the previous 12 months.

3. Navarro worked for Pfizer from August 1, 1994 until November 11, 1997.

4. Navarro occupied the position of Secretary.

5. On October 14, 1997, Navarro requested a leave of absence until January 5, 1998 to care for her pregnant daughter and her daughter's two children in Germany.

6. Navarro provided Pfizer with a certificate from her daughter's physician wherein he certified that Navarro's daughter was in her 36th week of pregnancy, was suffering from high blood pressure, and had been placed on bed rest so that she could bring her baby to term, which made her unable to care for her two young children.

7. Said leave of absence was expressly denied by Pfizer, verbally and in writing, on the grounds that the reason provided by Navarro in seeking the leave of absence did not fall within the terms of the FMLA. Notwithstanding, Navarro took a leave of absence and departed to Germany.

8. On November 6, 1997, Navarro received a letter from Pfizer's Human Resources Manager, Lizette Pérez, warning her that if she left for Germany the same would be considered an act of insubordination and/or abandonment of her job, and ordering her to report to work on Monday, November 9, 1997.

9. On November 11, 1997, Pfizer notified Navarro in writing that her employment had been terminated because she failed to report to work as

ordered by the Human Resources Department.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v.*

*Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, she must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. DISCUSSION

### A. Claim for Leave under the Family and Medical Leave Act of 1993 (FMLA)

Under the FMLA, an eligible employee is entitled to twelve workweeks of leave over any period of twelve months because of (A) the birth or care of the employee's newborn child; (B) the placement of a child with the employee for foster care or adoption; (C) *the care of an employee's son, daughter, spouse or parent having a serious health condition;* or (D) the employee's serious health condition that leaves the employee unable to perform the requirements of her job.[1] *See* 29 U.S.C. § 2612(a)(1) (emphasis added). Following a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms. *See id.,* § 2614(a). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.,* § 2615(a)(1).

Navarro sought leave from her employer under the FMLA to care for her adult daughter, who Navarro alleges was suffering from a serious health condition at the

---

1. Congress enacted the FMLA in 1993 in response to demographic changes in the workforce that had a detrimental impact on the ability of families to care for their children and ill family members. *See* 29 U.S.C. § 2601(a).

time. The provision under which Navarro contends she was entitled to take leave reads: "An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines a "serious health condition" as any physical or mental condition that involves inpatient care or continuing treatment by a health care provider.[2] *Id.*, § 2611(11). Although pregnancy per se is not a serious health condition under the FMLA, complications related to pregnancy figure among the examples of serious health conditions given in the Senate Report accompanying the FMLA.[3] Plaintiffs have come forward with evidence to show that their daughter was suffering from high blood pressure, that she was under the care of a physician, and that her physician ordered her on bed rest in her 36th week of pregnancy in order to bring her baby to full term. Although the record does not reflect the nature of the

risk to the unborn child, Plaintiffs' evidence at least raises a genuine issue of material fact as to whether their daughter suffered from a "serious health condition" as contemplated by the Act due to a complication related to her pregnancy.

The principal issue in this case, however, is not whether Plaintiffs' daughter was suffering from a "serious health condition." The issue, strangely enough, is whether she qualifies as a "daughter" under the FMLA. Section 101(12) of the FMLA defines the term "son or daughter" as a child of a person who is either under 18 years of age, or "18 years of age or older and incapable of self-care because of a mental or physical disability."[4] 29 U.S.C. § 2611(12). As Plaintiffs' daughter is over 18 years of age, the latter definition controls.

Defendants argue that Navarro was not entitled to take leave under the FMLA because her daughter did not suffer from a "mental or physical disability" and thus does not fit within the definition of "daugh-

2. The Regulations indicate that a serious health condition will at minimum include either: (1) a period of incapacity of more than three consecutive days together with subsequent multiple treatments or related periods of incapacity; (2) *a period of incapacity due to pregnancy* or for prenatal care; (3) a period of incapacity or treatment for incapacity due to a chronic serious health condition; (4) a permanent or long-term period of incapacity due to ineffective treatment; or (5) a period of absence to receive or recover from multiple treatments by a health care provider for restorative surgery or a condition likely to result in incapacity if no treatment is received. 29 C.F.R. § 825.114(a)(2)(v) (emphasis added).

3. The Senate Report states that: "Examples of serious health conditions include but are not limited to heart attacks, heart conditions *requiring heart bypass of valve operations*, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, injuries caused by serious accidents on or off the job, ongoing pregnancy, miscarriages, *complications or illnesses related to pregnancy*, such as severe morning sickness, the need for prenatal care, childbirth and recovery from

childbirth. All of these conditions meet the general test that either the underlying health condition or the treatment for it requires that the employee be absent from work on a recurring basis or for more than a few days for treatment or recovery. They also involve either inpatient care or continuing treatment or supervision by a health care provider, and *frequently involve both.*" S.Rep. No. 103–3, at 29 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 31 (emphasis added).

4. According to the Senate Report, the FMLA permits a parent to take leave to care for a child 18 years or older in certain circumstances because "where a child has a mental or physical disability, a child's need for parental care may not end when he or she reaches 18 years of age. In such circumstances, parents may continue to have an active role in caring for the son or daughter. An adult son or daughter who has a serious health condition and who is incapable of self-care because of a mental or physical disability presents the same compelling need for parental care as the child under 18 years of age with a serious health condition." S.Rep. 103–3, at 22 (1993).

ter." Regulations enacted pursuant to the FMLA provide that "physical or mental disability" is a physical or mental impairment that substantially limits one or more of the major life activities of an individual, as defined by regulations issued pursuant to the Americans with Disabilities Act (ADA). *See* 29 C.F.R. § 825.113(c)(2). In other words, in order for an employee to take leave under the FMLA to care for a child over 18 years of age, that child must be an "individual with a disability" within the scope of the ADA. Thus, to resolve whether Navarro was qualified to take leave under the FMLA, the Court must turn from the statutory and regulatory framework of the FMLA to that of the ADA.

**B. Americans With Disabilities Act Regulations**

The FMLA directs us to 29 C.F.R. § 1630.2(h)–(j), the regulations implementing the ADA, for the definition of "a physical or mental impairment that substantially limits one or more major life activities of an individual." *Id.* The ADA regulations define a physical impairment as any physiological disorder or condition affecting one or more body systems, including the reproductive system. *See id.,* § 1630.2(h)(1). Plaintiffs allege that their daughter was suffering from a physiological condition affecting her reproductive system, and that this condition substantially limited her major life activity of caring for herself and her children. Defendants counter that they are entitled to summary judgment because pregnancy is not a disability under the ADA.

Defendants are correct that no court now maintains that pregnancy per se is a disability under the ADA.[5] A narrower

question, however, and one not susceptible of simple resolution, is whether pregnancy-related complications can constitute a disability under the ADA. This issue has caused a rift among the district courts, and has not been addressed by any circuit court. Many district courts have held that the ADA's definition of "disability" encompasses neither pregnancy nor complications related to pregnancy. *See Richards v. City of Topeka,* 934 F.Supp. 378, 382 (D.Kan.1996), *aff'd,* 173 F.3d 1247 (10th Cir.1999)[6]; *Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625 (S.D.N.Y.1996); *Gudenkauf v. Stauffer Comm., Inc.,* 922 F.Supp. 465, 474 (D.Kan.1996); *Jessie v. Carter Health Care Ctr.,* 926 F.Supp. 613, 616 (E.D.Ky.1996); *Villarreal v. J.E. Merit Constructors, Inc.,* 895 F.Supp. 149, 152 (S.D.Tex.1995); *Tsetseranos v. Tech Prototype, Inc.,* 893 F.Supp. 109, 119 (D.N.H. 1995).

In *Tsetseranos,* the court held that ovarian cysts complicating plaintiff's pregnancy did not constitute a disability under ADA. 893 F.Supp. at 119. It relied on the EEOC's "interpretive guidance" on Title I of the ADA, which states that "conditions, such as pregnancy, that are not the result of a physiological disorder are [ ] not impairments." *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(h), at 349 (1999)). Further, the EEOC interpretive guidance provides that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j), at 349). Based on these guiding principles, and the observation that Title VII and the Pregnancy Discrimination Act already specifically proscribe employment discrimination on the basis of pregnancy and related

---

**5.** After facing sound criticism, the only district court judge to hold that pregnancy itself is a disability under the ADA, Judge Castillo in *Chapsky v. Baxter Mueuller Div.,* No. 93–6542, 1995 WL 103299 (N.D.Ill. Mar. 9, 1995), reversed his position in a subsequent case. *See Gabriel v. City of Chicago,* 9 F.Supp.2d 974, 981 (N.D.Ill.1998) (finding

that pregnancy alone is not a disability under the ADA).

**6.** The Tenth Circuit assumed, without deciding, that pregnancy alone could not qualify as a disability under the ADA. It affirmed the district court decision on other grounds. *See Richards,* 173 F.3d at 1250.

medical conditions, the *Tsetseranos* court concluded that pregnancy and related medical conditions do not constitute physical impairments or disabilities under the ADA. *See id.* The approach of the *Tsetseranos* court is typical of the decisions holding that pregnancy and related medical conditions are not disabilities under the ADA.

Other courts have distinguished between pregnancy itself and complications related to pregnancy, finding that the latter can constitute disabilities under certain circumstances. *See Gabriel v. City of Chicago,* 9 F.Supp.2d 974, 981 (N.D.Ill.1998) (back pain, stomach pain, swelling and premature birth are physical impairments); *Darian v. University of Mass. at Boston,* 980 F.Supp. 77, 87 (D.Mass.1997) (severe pain and paralyzing uterine contractions are disability under Title II of ADA); *Hernandez v. City of Hartford,* 959 F.Supp. 125, 130 (D.Conn.1997) (uterine fibroids causing risk of premature labor are a physical impairment); *Cerrato v. Durham,* 941 F.Supp. 388, 392 (S.D.N.Y.1996) (spotting, leaking, cramping and dizziness related to pregnancy are a physical impairment). *See also Patterson v. Xerox Corp.,* 901 F.Supp. 274, 278 (N.D.Ill.1995) (severe back pain caused by pregnancy and aggravation of previous back injury constitutes a disability under ADA).

In both *Hernandez* and *Darian,* for example, our sister courts in the First Circuit observed that neither the EEOC regulations nor the interpretive guidance "explicitly exclude pregnancy-related impairments, provided that they are a result of a physiological disorder." *Hernandez,* 959 F.Supp. at 130; *Darian,* 980 F.Supp. at 87. It should therefore be ascertained whether an individual suffers from a physiological condition or disorder, defined as the "abnormal functioning of the body or a tissue or organ," without respect to the origin of the disorder. *Darian,* 980 F.Supp. at 86, 87. The EEOC regulations support this approach, instructing courts to look primarily at the effect of a given impairment on a particular individual when determining whether that individual has a disability, rather than relying on the name or diagnosis of the impairment. *See* 29 C.F.R. § 1630.2(j). The EEOC Compliance Manual also distinguishes pregnancy from its related complications. *See Darian,* 980 F.Supp. at 85 (citing 2 EEOC Compliance Manual, EEOC Order 915.002, § 902.2(c)(3)).

Although both approaches find support in the EEOC regulations, this Court is persuaded that the sounder approach is that adopted by the *Hernandez* and *Darian* courts. Indeed, while the EEOC regulations specifically exclude pregnancy from the ADA's coverage, they are silent as to the physiological conditions or disorders which may stem from a pregnancy. Further, it would be illogical to exclude from the reach of the ADA certain physiological conditions or disorders simply because they are related to a pregnancy. Such a blanket exclusion would in effect treat some physiological disorders differently than others, without respect to their impact on a given individual. *See Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (holding that ADA imposes a statutory obligation to determine existence of disability on case-by-case basis, based upon actual effect of impairment on life of individual in question). The *Tsetseranos* court's approach, and that of courts in agreement with it, thus sweep too broadly and must be rejected.

Moreover, the *Tsetseranos* court's observation that employment discrimination on the basis of pregnancy is already covered by Title VII and the Pregnancy Discrimination Act ignores the fact that the ADA's scope is broader than Title VII and the PDA. For example, in *Darian,* the plaintiff was a nursing student who sued under Title II of the ADA for an accommodation in her university's nursing program. Title VII and the PDA, in contrast, do not reach beyond the employment context. In addi-

tion, as in the case at bar, the construction of the ADA provisions also have implications for coverage under the FMLA. It cannot be said, therefore, that the existence of Title VII and the PDA obviate the need to extend the ADA to complications related to pregnancy.

■ Applying this legal conclusion to the case at bar, however, does not save Plaintiffs' claim from summary dismissal. The Court finds that Plaintiffs' daughter did not suffer from a disability within the scope of the ADA. Plaintiffs allege their daughter suffered from high blood pressure in her 36th week of pregnancy and that this condition substantially limited her major life activity of caring for herself and her two young children. *See* 29 C.F.R. § 1630.2(i) (listing "caring for oneself" among the examples of major life activities contemplated by the statute). In determining whether a physical impairment substantially limits a major life activity, the Court must take into account the severity, duration, and long-term impact of the impairment. *See Hernandez*, 959 F.Supp. at 131 (citing 29 C.F.R. § 1630.2(j)(2)). Plaintiffs do not allege that their daughter was suffering from high blood pressure throughout much of her pregnancy, that the risk of premature birth extended throughout much of the pregnancy, or that her condition would have any long-term or permanent impact.[7] *See id.* (denying summary judgment to defendant where plaintiff's impairment existed throughout her pregnancy); *Gabriel*, 9 F.Supp.2d at 980–81 (finding substantial limitation where "the risk and symptoms of plaintiff's premature labor persisted throughout her pregnancy ...."). The Court therefore concludes that Plaintiffs' daughter was suffering from a "temporary, non-chronic impairment [ ] of short duration, with little or no long·term or permanent impact...." 29 C.F.R. Pt. 1630, App. § 1630.2(h), at 396. As such, she did not suffer from a "physical disability" as that term is defined by the FMLA statute and the ADA regulations. This being the case, Navarro was not entitled to leave under the FMLA to care for her daughter.

### C. Claim for Retaliation under FMLA

■ Plaintiffs also claims that Defendants breached the FMLA by terminating her in retaliation for exercising her rights under the FMLA. The FMLA recognizes a cause of action for retaliation, in which employers discharge employees for exercising their FMLA right to leave. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir.1998); 29 C.F.R. § 825.220. To establish a prima facie case for retaliation under the FMLA, Navarro first must show that she "availed h[er]self of a protected right under the FMLA." *Id.* In light of this Court's holding that Navarro was not entitled to leave under the FMLA, she cannot maintain a cause of action for retaliation. Thus, Defendants are entitled to summary judgment in their favor.

### V. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendants' motion for summary judgment. Having dismissed Plaintiffs' claims under the FMLA, the Court declines to exercise supplemental jurisdiction over their cause of action arising under Article 1802 of the Puerto Rico Civil Code.

**IT IS SO ORDERED.**

---

7. The normal gestation period is 39 weeks.